IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LONNIE L. PERRY,<br><br>Defendant. | 8:20CR200<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on defendant Lonnie L. Perry's ("Perry") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Filing No. 112). The Court held an evidentiary hearing on March 6, 2025. For the reasons stated below, Perry's motion is denied.

I.    BACKGROUND

On October 25, 2017, a man robbed $300 from a store clerk at gunpoint at a Select Mart convenience store in Omaha, Nebraska. *See United States v. Perry*, 61 F.4th 603, 605 (8th Cir. 2023). The robbery was not only witnessed by the clerk and a customer but was also "captured on store security video." *Id*. The robber also left his "fingerprints on the door." *Id*.

About eleven days later, a VP Racing Station convenience store in Omaha was likewise robbed at gunpoint. *See id*. This time, two store clerks witnessed the robbery, which was again captured on video. *See id*. Before he left the store, the robber "pulled down his mask, exposing part of his face." *Id*. In making his escape, the robber also fired shots at a minivan occupied by a family of three in the parking lot. *Id*.

The next day, Omaha Police Department officers (the "police") responded to a call about an armed man at a Runza restaurant in Omaha. *See id*. They found Perry next to a trashcan that contained a stolen Taurus 9 mm handgun. *See id*. They arrested Perry and

tested the gun for DNA, learning Perry likely had touched it. *See id.* He later pleaded guilty in state court to possessing the gun. *See id.*

Putting two and two together, a detective assigned to the convenience-store robberies suspected Perry may be the robber. *See id.* After further investigation, the police matched Perry to the fingerprints at the scene of the first robbery and matched the gun to the shots fired at the second robbery. *See id.*

On July 24, 2020, a federal grand jury indicted (Filing No. 1) Perry on two counts of interfering with commerce by robbery, in violation of 18 U.S.C. § 1951, and two counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). In that indictment, the grand jury further charged Perry with discharging the firearm in furtherance of the second robbery. *See id.* § 924(c)(1)(A)(iii).

At Perry's initial appearance and arraignment, the Court appointed Assistant Federal Public Defender Karen Shanahan ("Shanahan") to represent him (Filing No. 9). With Perry's permission, Shanahan entered plea discussions with the government. Before trial, the government offered him a plea agreement under which he would have pleaded guilty "to one robbery count and one discharging a firearm count in exchange for a sentence not to exceed 150 months." *See* Fed. R. Crim. P. 11(c)(1)(C). Perry also would have received credit for the considerable time "he spent in state incarceration for a related firearm conviction." Perry says he would have accepted the plea offer, but the government withdrew it before he could. Shanahan says Perry rejected it and made a counteroffer that never bore fruit.

At trial, the government presented evidence from the robbery victims, other witnesses, and several police officers, including forensic technicians Sarah Lund ("Lund") and Amanda Miller ("Miller")—who collected and processed the fingerprints—and forensic examiner Rebecca Learned ("Learned")—who compared the ballistics of the

bullets retrieved at the scene of the second robbery with one test fired from the gun seized during Perry's arrest. The government also presented security-video footage from the robberies, still photographs, and DNA evidence.

Based on that evidence, a jury found Perry guilty of all charges on July 8, 2021 (Filing No. 49). The Court sentenced Perry to a total of 274 months imprisonment, to be followed by 5 years of supervised release (Filing No. 76).[1]

Perry timely appealed his conviction, arguing the Court should not have allowed expert testimony about the gun from Learned because, in his view, she was not an expert in firearms identification. *See Perry*, 61 F.4th at 605; Fed. R. Evid. 702 (expert testimony). Perry further argued the evidence was insufficient to convict him. *See Perry*, 61 F.4th at 606. In particular, he argued the evidence failed to establish him as the robber because no eyewitness identified him. *See id.*

Rejecting Perry's first argument, the Eighth Circuit concluded "Learned's degrees and training gave her competence for the subject area of her testimony." *See id.* With respect to sufficiency, the Eighth Circuit determined the government had adduced sufficient evidence of Perry's guilt to support the jury's verdict, including video footage, still images, fingerprint evidence, ballistics evidence, and DNA. *See id.*

On May 3, 2024, Perry moved to vacate, set aside, or correct his sentenced based on prejudicial errors he contends his counsel made. *See* 28 U.S.C. § 2255; *Strickland v. Washington*, 466 U.S. 668, 694 (1984). He asserts his counsel erred by failing to (1) "inform [him] of the fingerprint evidence that the government intended to use at trial"— evidence that would have led him to accept "the government's plea offer" (2) "inform [him] of the firearm toolmark evidence the government intended to use at trial"—evidence

---

[1] Perry's total sentence was later reduced to 261 months based on the retroactive application of Amendment 821 to the United States Sentencing Guidelines (Filing Nos. 126, 128). *See* 18 U.S.C. § 3582(c)(2).

that again would have led him to plead guilty, (3) object to testimony from Miller about "when fingerprints were deposited," (4) object to testimony from Lund about "the quality of the latent prints . . . lifted at the crime scene," (5) object to Lund's testimony about "when fingerprints were deposited," and (6) communicate details of the plea offer including the deadline for acceptance."

The government opposes Perry's motion (Filing No. 122). As the government sees it, Perry fails to show Shanahan's performance fell below *Strickland*'s objective standard of reasonableness. In particular, the government contends Shanahan effectively cross-examined Miller, getting her to admit to making a prior misidentification and confirming that she could not tell when a print was left regardless of its quality. The government further argues that regardless of any errors Shanahan may have made, Perry cannot show prejudice given the nature of the purported errors and the strong evidence of his guilt.

On March 6, 2025, the Court held an evidentiary hearing at which both Perry and Shanahan testified. The Court also received three exhibits without objection. Perry's § 2255 motion is now fully briefed and ready for decision.

## II. DISCUSSION

### A. Standard of Review

Section 2255(a) authorizes federal prisoners to seek post-conviction relief if their sentence was imposed "in violation of the Constitution or laws of the United States." It serves a critical purpose but is limited. It neither encompasses every claimed error in a prisoner's conviction and sentence, *see Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc), nor acts as "a substitute for a direct appeal," *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994).

Instead, relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United*

*States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  In raising a collateral attack under § 2255, the prisoner "bears the burden to prove each ground" for relief.  *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

B.   **Allegations of Ineffective Assistance of Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding, including during plea negotiations, trial, sentencing, and appeal.  *See* U.S. Const. amend. VI; *Lee v. United States*, 582 U.S. 357, 363 (2017).  Perry asserts Shanahan was unconstitutionally ineffective both before and during trial.

To prove ineffective assistance and obtain relief under § 2255, Perry must show Shanahan's performance was "deficient"—that is, that she "made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and "that the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  Perry's burden is a heavy one.  *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  And failing to show "either *Strickland* prong is fatal."  *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021) (quoting *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014)).

Under *Strickland*, counsel's performance is deficient when it falls "below an objective standard of reasonableness" "under prevailing professional norms."  466 U.S. at 688.  The Court's review of counsel's performance is highly deferential.  *Id.* at 689.  The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*  Counsel benefits from "a strong presumption that [their] conduct falls within the wide range of reasonable professional assistance" and may be considered a sound strategy.  *Id.*

5

To prove prejudice, Perry "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not sufficient for [Perry] to show that the error had some 'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693); *accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (explaining the focus of *Strickland*'s prejudice prong is whether the proceeding was fundamentally unfair).

### 1. Failure to Inform and Communicate

Three of Perry's ineffective-assistance claims derive from Shanahan's purported failure to inform him of the fingerprint and firearm toolmark evidence against him and to communicate the terms of the government's plea offer, including any deadline for acceptance. According to Perry, Shanahan never discussed the criminal process with him and did not discuss the bulk of the evidence in his case until he was already in trial. Perry claims he would have timely accepted the government's plea offer if she had given him a more complete picture of his circumstances. Indeed, he asserts he "believed he had more time to consider the offer, and when he communicated his acceptance, he was told the plea offer was no longer available." He asserts that when he wanted to bring the issue before the Court, Shanahan told him not to because it would just side with the government.

In all, Perry estimates that he spoke or met with Shanahan about nine times before trial for a combined total of no more than sixty-seven minutes. On cross-examination, Perry could not explain his purported willingness to accept the plea offer without change or further discussion despite claiming he barely met with Shanahan and was never informed of any of the damning evidence against him.

Shanahan's recollection of her time with Perry differs from his like night and day. In her affidavit, Shanahan states she specifically and thoroughly addressed with Perry all of the evidence against him, including "toolmark evidence, ballistics, DNA, [and]

6

fingerprint evidence" and told him that each piece of evidence was a piece of the puzzle that "when put together could lead to conviction." Shanahan reiterated at the hearing that Perry's pretrial detention at a remote location and the COVID-19 pandemic impacted her ability to meet with him in person. Despite that, she stated she still met with him several times, by phone, zoom, video, and in person.

During those meetings, Shanahan avers they reviewed the discovery the government provided and discussed possible defenses Perry could raise and potential alibi witnesses he could call. On multiple occasions, she conveyed to him that the ballistics, DNA, and fingerprint evidence against him was crucial. She stated that Perry responded by unduly fixating on the circumstantial nature of the evidence despite Shanahan warning him that the jury could still use it to convict him.

The strength of the evidence against Perry led Shanahan to seek Perry's permission to pursue a plea, which he gave. From there, Shanahan says she negotiated a potential plea with the government and discussed the precise terms and timeline with Perry in person. Perry ultimately rejected the government's plea offer, opting to go to trial.

The Court has carefully reviewed Perry's allegations of ineffective pretrial assistance in light of *Strickland*'s high bar and finds he is not entitled to relief. 466 U.S. at 687; *accord Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020). He shows neither deficiency nor prejudice. *See Strickland*, 466 U.S. at 687.

Perry's dubious claims that Shanahan—an experienced and accomplished assistant federal public defender—barely met with him before trial and never discussed any of the crucial evidence against him—are flatly contradicted by more credible evidence from Shanahan that she spent hours with Perry and thoroughly discussed the government's strong case against him. *See Burnett v. United States*, 125 F.4th 912, 916 (8th Cir. 2025) (upholding a denial of § 2255 relief based on evidence from counsel that the district court found more credible). They dutifully tried to negotiate a plea agreement with the

7

government but could not agree on the terms. Shanahan's detailed description of her and her staff's work with Perry is supported by common sense, her contemporaneous time records, and her knowledge of the evidence at trial. Against that, Perry's self-serving testimony about what Shanahan purportedly failed to do and what he would have done if she had only said more rings hollow.

### 2. Failure to Object

In his last three claims, Perry faults Shanahan for failing to object to Miller's and Lund's respective testimony about certain aspects of the government's fingerprint evidence. As he sees it, the testimony in question improperly "implied that the fingerprints were deposited during the robbery" and bolstered Miller's testimony to that effect despite Shanahan's cross examination.

At the evidentiary hearing, Perry's retained counsel asked Shanahan why she did not object to the challenged testimony at trial. She testified that—as a matter of strategy—she preferred to move on and focus on "previous mistakes that these fingerprint people had" made in the past, rather than to further emphasize for the jury the strong fingerprint evidence in Perry's case by highlighting any arguably objectional remarks.

Shanahan further explained that she chose to emphasize the fact that Miller and Lund only watched part of the surveillance video, leaving open the possibility that Perry might have left a fingerprint earlier in the day while patronizing the store as a customer. According to Shanahan, she was very concerned about highlighting some of the strongest evidence against Perry and telegraphing to the jury that the fingerprint was "more damning than it even appears." When asked whether she could have requested a limiting or curative instruction, Shanahan asserted that an instruction would only exacerbate the problem she was trying to minimize.

Shanahan has articulated sound, tactical reasons for her handling of the challenged testimony. *See Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010) (concluding

8

"[p]rior counsel's testimony from the evidentiary hearing indicate[d] that his decision not to object . . . was a well-reasoned, tactical decision" based on his balancing of the risks of objecting against the likely benefits); *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001) ("We generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Her strategic decisions fall well within *Strickland*'s strong presumption of reasonableness and are "virtually unchallengeable" in these circumstances. *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006); *see also Strickland*, 466 U.S. at 689-90 (explaining "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

With the benefit of hindsight and far removed from the fog of trial, Perry suggests Shanahan should have taken a different tack. Maybe his proposed objections would have worked better; maybe they would have made things worse. But that is beside the point. Even if Perry is correct that Shanahan made some sort of tactical error by failing to object, it would still not entitle him to any relief on this record. "The correct inquiry is not whether counsel's decision was correct or wise, but whether it 'was an unreasonable one which only an incompetent attorney would adopt' considering all the circumstances." *United States v. Flynn*, 87 F.3d 996, 1000 (8th Cir. 1996) (quoting *Stokes v. Armontrout*, 851 F.2d 1085, 1092 (8th Cir. 1988)). It wasn't.

"There are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, and this Court "must avoid second-guessing trial strategy." *Sanders v. Trickey*, 875 F.2d 205, 207 (8th Cir. 1989). By any fair measure, Shanahan's strategic decisions—even if mistaken—do not bear the indelible marks of unbridled irrationality or rank incompetence. *See Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) ("An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake.").

9

Because Shanahan capably served as the counsel the Sixth Amendment requires, *see Strickland*, 466 U.S. at 687 (requiring "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"), Perry's ineffective-assistance claims fall short.

### C.     No Certificate of Appealability

Before Perry can appeal the Court's denial of his § 2255 motion, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). To do that, he must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Because Perry has not made the requisite showing, the Court will not issue a certificate of appealability in this case.

Based on the foregoing,

IT IS ORDERED:

1. Defendant Lonnie L. Perry's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 112) is denied.
2. No certificate of appealability will issue.
3. A separate judgment will be entered.

Dated this 25th day of March 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge